### Application of PUBLIC UTILITIES CORPORATION.
No. 8655-WS.

Florida Public Service Commission.

June 20, 1969.

Starr W. Horton, Miami, for the applicant.

E. Louis Fields and Harry A. Gaines, both of Fort Lauderdale, for City of Sunrise Golf Village, intervenor.

James L. Graham, Jr., B. Kenneth Gatlin and R.M.C. Rose, for the commission staff and the public generally.

Chairman WILLIAM T. MAYO, JERRY W. CARTER and JESS YARBOROUGH participated in the disposition of this matter.

## BY THE COMMISSION.

The commission held public hearings pursuant to notice in Sunrise Golf Village on March 14, 1967, in Fort Lauderdale on February 1, 1968, and in Tallahassee on March 27, 1969.

Public Utilities Corporation provides water and sewer service to its customers in the city of Sunrise Golf Village, Broward County, pursuant to certificates of public convenience and necessity nos. WS-47 and SS-36 issued by this commission on October 25, 1965. This system began service in July of 1961.

This utility has no wells or water or sewer treatment facilities. It obtains treated water from Utilities Operating Company, Inc. and delivers raw sewage to Utilities Operating Company, Inc. for treatment. Therefore, the scope of our inquiry in this docket embraced, to some extent, our considerations in proceedings concerning Utilities Operating Company, Inc.

On August 12, 1966, Public Utilities Corporation filed an application with the commission for authorization to increase its rates for water and sewer service to its customers.

The application listed both the present and proposed rates for water and sewer service which are as follows —

### WATER RATES
Residential and Commercial Per Month

| *Present* | | *Proposed* | |
|---|---|---|---|
| First 5,000 gal. or less | $ 2.75 | First 3,000 gal. or less | $ 4.50 |
| Additional gal. per | | 3,001 gal. to 6,000 gal. | |
| 1,000 gal. | .45 | per 1,000 gal. | .60 |
| | | 6,001 gal. to 10,000 gal. | |
| | | per 1,000 gal. | .50 |
| | | All over 10,000 gal. per | |
| | | 1,000 gal. | .40 |

*Service to Builders, etc.*

| | |
|---|---|
| .45 per 1,000 gal. | .50 per 1,000 gal. |

### SEWER RATES
Residential Per Month

| | | | |
|---|---|---|---|
| Minimum charge | $ 3.25 | Minimum charge | $ 5.55 |
| Each additional | | Each additional | |
| toilet facility | 1.00 | toilet facility | 1.00 |

*All Other Customers*
Minimum monthly charge

| | |
|---|---|
| $ 3.55 | $ 5.50 |
| 100% surcharge on water bill | 100% surcharge on water bill |

In July, 1967, the applicant filed a petition requesting authority to increase its rates and charges on a temporary basis. The commission considered a petition and issued order no. 4234 on August 17, 1967, granting a temporary increase in rates. In that order we stated, "we do not conclude that the increases in the amount requested by the petitioner are necessary." The temporary increases were permitted upon a prima facie showing by the applicant of the need, based upon its pleadings and representations, before cross-examination by the commission staff, representatives of the city of Sunrise Golf Village, or other interested parties had occurred.

The applicant was, therefore, authorized to increase its rates and charges to gain an increase in gross revenues in the amount of $29,760 for its sewer operation and $7,611 for its water operation for ninety days.

A public hearing was scheduled to conclude the proceedings of this docket on September 14, 1967, but this hearing was not held because the city of Sunrise Golf Village filed a writ of prohibition with the District Court of Appeal of Florida, First District (Lomello v. Mayo, 204 So.2d 550). As a result, the applicant requested, and was granted an extension of the temporary rate increase for an additional ninety days by order no. 4294 issued herein on December 14, 1967.

The temporary rate increase was extended for another ninety day period by order no. 4325 issued in this docket on February 27, 1968 and on July 26, 1968 the utility was authorized to retain the temporary utility rate increase in effect until the final determination was made in these proceedings.

We mentioned earlier that the applicant presented its direct testimony during the first hearing but was not at that time subject to cross-examination. This was due to the unavoidable absence of the commission's staff attorney, Mr. Gatlin.

The cross-examination by the staff attorney and the attorney for the city of Sunrise Golf Village during the second hearing demonstrated unquestionably that the application was based upon a fair value appraisal of the utility system. This approach to the establishment of a rate base for this utility is wholly unacceptable because the system was built and placed in public service subsequent to the "fair value date" for Broward County as prescribed by Section 367.12(2)(b), Florida Statutes. That section of the statute provides —

> With respect to utilities operating in counties under the jurisdiction of the commission prior to September 1, 1967, the commission in all rate proceedings concerning said utilities shall investigate and determine the fair value of the utilities' property used and useful in the public service

as of the date on which the county in which such utilities operate enacted a resolution declaring that the county is subject to the provisions of this act; and shall further investigate and determine the actual legitimate costs to said utilities of all additions thereto subsequent to such date on which the county became subject to the jurisdiction of the commission. In all rate proceedings concerning said utilities, the commission shall allow to the utilities a fair return on the fair value of the utility's property used and useful in the public service as of the date on which the county in which the utility is located became subject to the jurisdiction of the commission, together with a fair return on the utility's actual costs of all net additions thereto subsequent to said effective date. The commission shall determine that the net investment so computed shall be the money honestly and prudently invested by the public utility in property used and useful in serving the public, less accrued depreciation, and shall not include any contributions in aid of construction.

Broward County adopted a resolution placing regulatory jurisdiction of water and sewer utilities operating in that county in this commission pursuant to the provisions of chapter 367, Florida Statutes, in September of 1959. Thus, the "fair value date" for utilities operating in that county is prior to the existence of the applicant in this docket.

This applicant, under the terms of the rate making procedure of the statute, may not enjoy any return on contributions in aid of construction.

Applicant's witness, Mr. Buscher, took the position that the $969,413 contributions in aid of construction, showed on page 1 of applicant's exhibit 1 were "third party contributions" and should not be deducted from the utility's rate base of $929,421 net utility plant.

On cross-examination applicant's accounting witness, Mr. Ralfs, clearly established that the so-called "third party contributions" are in fact contributions in aid of construction. As such, these must be deducted from the utility rate base.

The close of the hearing left the commission without a basis upon which to establish a rate base since the applicant had proceeded on an erroneous basis. The elimination of the $969,413 in contributions in aid of construction would have reduced to zero the $929,421 in net utility plant used and useful in the public service.

The application in this docket was brought by Public Utilities Corporation upon *its* request to increase *its* rates. The applicant had the burden of showing that it is entitled to the increases it seeks.

The duty of the commission is to the whole public, the utility as well as the utility customers. Section 367.12(3) provides —

(3) Whenever the commission shall find, upon request made or upon its own motion, that the rates demanded, charged or collected by any public utility company for public utility service, or the rules, regulations or practices of any public utility affecting such rates, are unjust, unreasonable, unjustly discriminatory or in any way in violation of law, that such rates are insufficient to yield reasonable compensation for the services rendered, or that such service is inadequate or cannot be obtained, the commission shall order and hold a public hearing in the county wherein a majority of the service involved is furnished, giving reasonable notice to the public and to the public utility, and shall thereafter determine just and reasonable rates to be thereafter charged for such service and to promulgate rules and regulations affecting equipment, facilities and service thereafter to be installed, furnished and used.

The statute makes it clear that when the commission finds the rates charged by the utility are insufficient to yield reasonable compensation for the services rendered that after hearing, the commission should determine just and reasonable rates but does not provide a precise guideline to follow when the commission is in doubt because the applicant has failed to carry the burden of proof.

We considered this and decided to set the matter for further hearing to provide the applicant an opportunity to show, if it could, that a rate base upon an original cost foundation might be established. The applicant failed.

On April 11, 1968, the applicant filed a late filed exhibit which was subsequently marked for identification as exhibit 8. An engineering witness, Mr. Peter Broome, was presented by the applicant for cross-examination on any questions regarding the exhibit. That cross-examination demonstrated that the invoices and the materials on which the exhibit was based were of doubtful reliability. The witness did not know whether he had all of the invoices or whether they were authentic. The reliability of the documents was placed in further doubt because this same witness had testified earlier in this docket that the invoices were not available.

This witness further testified that he had examined and prepared this exhibit based upon the applicant's payroll records but did not have the records at the hearing and did not know whether he had had available all of the payroll figures.

Mr. Broome further testified that the exhibit was also based upon certain estimates to arrive at the overhead costs. However, this was shown not to be an estimate but a mere guess.

In short, the opportunity we granted the applicant to prove its case was not utilized by the utility for that purpose. Our course

now is either to try to pick our way through the jumble of questionable figures to arrive at a rate base or to deny this application and leave to the applicant the question of whether to make a new application.

The first alternative would, as we have demonstrated, require our indulgence in considerable conjecture. We cannot indulge in conjecture but must place the burden of reasonable, clear and specific proof upon the applicant. We therefore find that the applicant has failed to carry the burden of proving that it is entitled to this rate increase and that this application should be dismissed.

It is therefore ordered that the application of Public Utilities Corporation for an increase in rates and charges for water and sewer service to its customers in Broward County, be and is hereby dismissed.

It is further ordered that the Public Utilities Corporation shall repay to its customers all the increased rates collected under the temporary rate increase within twelve billing periods from the date of this order.

It is further ordered that the Public Utilities Corporation shall immediately revert to and charge to its customers only those rates in effect at the time of the filing of this application, as set forth in this order until such rates are changed by an appropriate order of this commission.